IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

           Plaintiff,

Vs.                                No. 09-40048-01-SAC

OLLIE BROWN, JR.,

           Defendant.

MEMORANDUM AND ORDER

This case comes before the court on the defendant Ollie Brown, Jr.'s following pretrial motions: Motion to Suppress Identification (Dk. 14), Motion to Suppress Statements (Dk. 16), and Motion for Notice of Evidence of Other Crimes, Acts, Wrongs or Convictions (Dk. 19). The government has filed separate responses to each motion. (Dks. 23, 24, and 25). The court heard the parties' arguments and evidence on August 25, 2009. After reviewing the parties' presentations and researching the relevant law, the court issues the following as its ruling.

**INDICTMENT**

Ollie Brown, Jr. is the sole defendant named in a four-count indictment. Count one charges carjacking on December 13, 2007, in violation of 18 U.S.C. § 2119. Count two charges using and carrying a

firearm in connection with a crime of violence, that is, the carjacking charged in count one, in violation of 18 U.S.C. § 924(c)(1)(A). Counts three and four charge separate offenses of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), on the dates of December 13, 2007, (date of the carjacking), and on September 13, 2008, (date of his arrest on state warrants).

**MOTION TO SUPPRESS IDENTIFICATION (Dk. 14)**

The defendant seeks an order that excludes testimony and other evidence that the victim of the alleged carjacking, Yvette Zotigh, identified the defendant as the perpetrator at a state court preliminary hearing on charges involving the facts of this case. The defendant also seeks an order that would bar Ms. Zotigh from making future in-court identifications of the defendant. Considering the circumstances of the alleged offense and of Ms. Zotigh's failure to identify the defendant from a photo array just weeks after the incident, the defendant argues the victim's in-court identification at the preliminary hearing is unreliable, is the result of suggestive circumstances, and would taint any future in-court identification by her. Over the government's objection, the court granted the defendant's request for an evidentiary hearing on his motion. At the hearing on August

24, 2009, counsel for both sides thoroughly questioned Ms. Zotigh about her ability to identify the perpetrator, the factors affecting her ability, and her explanation for making the identification. The parties ask the court to rule from the arguments and issues as briefed in advance of the hearing.

A pre-trial identification should be excluded if it occurred under impermissibly suggestive circumstances and the identification is unreliable under the totality of the circumstances. *Snow v. Sirmons*, 474 F.3d 693, 720 (10th Cir. 2007). "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). "[T]he linchpin in determining admissibility of identification testimony" is reliability. *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977). So even if the identification procedure or confrontation is suggestive, due process is not violated by the admission of the identification "so long as the identification possesses sufficient aspects of reliability." *Id.* at 106. Put another way, "the admissibility determination-both the admission of the extrajudicial identification and any subsequent in-court identification-must turn on reliability." *Young v. Sirmons*, 486 F.3d 655, 664 (10th Cir. 2007), *cert. denied*, 128 S. Ct. 1269 (2008). With regard to proving these elements, the defendant initially must show the identification procedure

was impermissibly suggestive, and upon that proof, the government must prove the identification is reliable independent of the suggestive procedure. *English v. Cody*, 241 F.3d 1279, 1282-83 (10th Cir. 2001).

   The defendant's presence at the state preliminary hearing and the nature of such a proceeding carry some level of suggestiveness to an identification made at the hearing. *See Howard v. Bouchard*, 405 F.3d 459, 470 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006); *United States v. Brown*, 200 F.3d 700, 707 (10th Cir. 1999), *cert. denied*, 528 U.S. 1178 (2000). The Tenth Circuit appears to have held that the circumstances of a preliminary hearing alone are not enough for a defendant to carry his burden of proving the "pretrial identification procedure . . . was unnecessarily suggestive." *See Brown*, 200 F.3d at 707 (internal quotation marks and citations omitted).[1] In her testimony, Ms. Zotigh acknowledged

---

[1] In *United States v. Brown*, 200 F.3d 700 (10th Cir. 1999), *cert. denied*, 528 U.S. 1178 (2000), the victim of a carjacking was shown a photo array on the night of the crime and was not able to identify the assailants. Several weeks later at the state preliminary hearing, the victim identified the two assailants, "but not positively." 200 F.3d at 700. At trial, the federal district court allowed the victim to identify the defendant from a photo array and to explain his inability to make an earlier identification from the photo arrays. The defendants argued on appeal that their appearance at the state preliminary hearing was "inherently suggestive" and that the federal court identification was also suggestive and unreliable. The Tenth Circuit rejected the defendant's arguments for suggestiveness on these grounds:

that she had been subpoenaed to the hearing and that before testifying she knew the person accused of the crime was sitting at the defense table. There was no evidence at the hearing to indicate that officers and prosecutors had given Ms. Zotigh any additional information concerning the accused to influence her identification at the preliminary hearing. The defendant does not argue and the record does not suggest the government did anything impermissible or unusual to make the in-hearing identification unduly suggestive. In her testimony at the evidentiary hearing, Ms. Zotigh specifically explained why she identified the defendant based on certain physical features, his behavior at the defense table, and his voice which

---

"Defendants have failed to demonstrate that the pretrial identification procedures in this case were "unnecessarily suggestive." *Id.* at 113, 97 S.Ct. 2243. In *United States v. Aigbevbolle*, 772 F.2d 652, 653-54 (10th Cir. 1985), we held that the inability to identify a defendant from a photo array does not render a subsequent in-court identification inadmissible, rather that inability goes to the weight of the witness's testimony, not its admissibility. Likewise, though the presence of Defendants at the state preliminary hearing may have been suggestive given the nature of such a hearing, that is not enough to render the subsequent trial identification inadmissible. *See Johnson v. Sublett*, 63 F.3d 926, 928-29 (9th Cir. 1995). Finally, the victim's identification of the Defendants at the trial, including another look at the photo arrays, while suggestive, occurred in the presence of the jury and the victim was fully and fairly cross-examined about the process and his previous inability to positively identify the Defendants. *See Aigbevbolle*, 772 F.2d at 654."
200 F.3d at 707-08.

she overheard while testifying. On the record as it stands, the court finds the defendant has not met his initial burden based on the Tenth Circuit precedent of *Brown*.

Had the defendant carried his burden, the court finds the second prong on reliability likewise favors admissibility of Ms. Zotigh's pre-trial identification of the defendant. Looking at the totality of the circumstances, the court weighs reliability "against the suggestiveness of the identification method" using the following five factors: "(1) the prior opportunity of a witness to observe the defendant during the alleged criminal act; (2) the degree of attention of the witness; (3) the accuracy of the witness' prior description; (4) the witness' level of certainty; and (5) the time between the crime and the confrontation." *Young*, 486 F.3d at 664. "In so doing, a court must ask whether under all the circumstances of the case, there is a very substantial likelihood fo irreparable misidentification." *Snow v. Sirmons*, 474 F.3d 693, 720 (10th Cir. 2007) (internal quotation marks and citations omitted).

Under the totality of the circumstances, including the five factors discussed here below, the court finds that Ms. Zotigh's identification at the preliminary hearing was sufficiently reliable to overcome any

suggestiveness in that procedure. Ms. Zotigh had a good opportunity to see the perpetrator. It was still daylight when she bent over to pick up a cup that had fallen from her car. The perpetrator appeared at just that moment. He opened her car door wider, squatted down to her level, and pointed a gun within inches of her face. She was able to see the perpetrator's face and the gun. After the man climbed into the backseat of her car, she conversed with him for approximately fifteen minutes hoping to defuse the situation and sharing her fears and concerns. Even though the perpetrator directed her not to look back, she caught glances of his face and head through the rearview mirror during their conversation and when he leaned forward to look through her purse. These circumstances also demonstrate Ms. Zotigh used a heightened degree of attention as she was directly confronted by the perpetrator with a gun, as she spoke with him at length, and as she complied with his different questions and requests. *See Howard v. Bouchard*, 405 F.3d at 473.

        The evidence at the hearing does not substantially dispute the accuracy of Ms. Zotigh's prior descriptions of the perpetrator as having a slight built, looking unkempt, being dark skinned with dark eyebrows and high cheekbones, and having a fade haircut with longer hair on top that

stuck up.  The difference in hairstyles carries little weight particularly with the record being silent on whether the defendant had longer hair in December 2007.  The sketch artist rendering also supports the accuracy of Ms. Zotigh's description of the defendant's eyes, which is the same feature she emphasized in identifying the defendant at the preliminary hearing.

      At both the preliminary hearing and the evidentiary hearing on these motions, Ms. Zotigh said she could identify the perpetrator and so identified defendant without qualifying or conditioning her testimony.  She testified that her confidence in doing so was based on being in the defendant's presence again, being close enough to see his eyes, and observing his anxious demeanor.  The features on which Ms. Zotigh relied in identifying the defendant are not ones suitably distinguished from a photo array.  It is evident Ms. Zotigh understood the importance of not jumping to conclusions and was careful in testifying only about she knew.  There's no question that almost a year elapsed from the commission of the offense and the identification of the defendant.  While such a period is "substantial," Ms. Zotigh's "recollection of these events was particularly vivid and there can be no doubt from her testimony that the incident had been burned into her memory indelibly."  *United States v. Eggleton*, 799

8

F.2d 378, 383 (8th Cir. 1986). The court finds the reliability of Ms. Zotigh's identification overcomes any suggestiveness with the preliminary hearing. The defendant's motion is denied.

**MOTION TO SUPPRESS STATEMENTS (Dk. 16)**.

The defendant seeks to suppress statements he made to law enforcement agents on February 20, 2008, March 12, 2008, May 27, 2008, and September 20, 2008, and to suppress a handgun seized as the tainted fruit of the September 20th statement. The court understands that the defendant's statements in February, March and May of 2008 were given to Detective Ryan Runyan with the Riley County Police Department who is currently deployed on overseas military duty. Consequently, the government did not introduce any evidence on whether those statements were made after the defendant's waiver of his *Miranda* rights. For these reasons, the court will grant the defendant's motion to suppress these statements but without prejudice to the government's request to reconsider these motions in light of some change in Detective Runyan's status.

As for the defendant's September 20th statements and the seizure of a handgun from the defendant's sister's apartment, the court relies on the following facts established at the evidentiary hearing on

9

August 25, 2009.  Based on a crime stoppers' tip from Kansas City and additional investigation and surveillance by his officers, Timothy Brown, Captain of the Detectives of the Junction City Police Department, concluded that the defendant had been staying at his sister's Junction City apartment and that the defendant could be armed.  On Saturday morning, September 20, 2008, Captain Brown gathered a team of seven officers to execute arrest warrants on the defendant Ollie Brown.  One of the officers drove by the apartment and recognized the defendant as one of two men standing outside the apartment.  Some of the officers established a perimeter around the back while Captain Brown with the remaining officers approached from the front with their weapons drawn.  They announced "police" and instructed the men to get down on the ground.  Brown recognized the one male to be the defendant who did not comply and ran into the basement apartment and shut the door behind him.

   Officers forcibly opened the apartment door but did not enter as several children began screaming.  Officers directed the defendant's sister to exit the apartment with her three children.  Officers could hear noises from the southwest bedroom.  Officer William Robert Arnold Jr. testified that he was stationed at the rear of the apartment building and he saw a window

open and someone's face appearing in it.  He pointed his weapon directly at the person who withdrew back into the basement apartment.  Officers announced that if the defendant did not surrender then a canine would be released into the apartment.  Officers prepared the dog for entry by having it bark repeatedly.  Just when the dog was released, the defendant announced he would come out if they called back the dog.  The defendant then emerged from the back bedroom and was arrested in the living room and handcuffed.  The defendant was given the *Miranda* warning, and he waived his rights and did not ask for an attorney.

        Captain Brown spoke with the defendant's sister and obtained her consent to search the apartment for weapons.  He explained the charges for which her brother was being arrested and told her of the danger to her children if a gun was in the apartment.  Captain Brown next advised the defendant that the apartment would be searched and that he should tell them the location of any weapons.  The defendant responded that anything found in the search was his.  Captain Brown informed the defendant it would not work that way explaining that if officers found weapons or drugs he had not previously identified by location, then family members could be charged as well.  The defendant said he didn't want family members to be

involved. Captain Brown described the defendant's demeanor as shaking, upset and crying.

The defendant then told officers they would find in the southwest bedroom some crack cocaine in a pair of pants and a gun under the mattress. Officers searched the bedroom and found neither drugs nor a gun. The defendant explained that he had been running and didn't remember where the gun had been placed. The defendant next led them to the other bedroom and the utility room where again officers found nothing. Finally, the defendant took officers to the living room and pointed to the couch where they found the handgun under a cushion.

The defendant contends his statements to officers leading to the discovery of the handgun were involuntary as coerced by threats of retaliation against his family. The defendant insists officers exploited his family relationship by threatening to have his sister charged and arrested if he did not tell them the location of a weapon. The government denies the officers threatened the defendant by merely stating that others renting or occupying the apartment could be charged with matters found in it. The government also remarks that the defendant could not have been coerced by this statement considering his willingness to use his sister's family as a

shield when running initially from the arresting officers.

It is for the government to prove by a preponderance of the evidence that a confession is voluntary. *United States v. Lopez*, 437 F.3d 1059, 1063 (10th Cir. 2006). It is for the court to decide whether:

> the confession [is] the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Id.* (internal quotation marks and citations omitted). Thus, "[a] defendant's statement that is extracted or induced by threats or promises is involuntary." *United States v. Hernandez*, 93 F.3d 1493, 1503 (10th Cir. 1996) (citations omitted). "Intimidating statements obtained by government acts, threats, or promises that permit the defendant's will to be overborne are coerced confessions running afoul of the Fifth Amendment . . . ." *Griffin v. Strong*, 983 F.2d 1540, 1543 (10th Cir. 1993) (citations omitted).

A court determines the voluntariness of a statement from the totality of circumstances, including "both the characteristics of the accused and the details of the interrogation." *United States v. Toles*, 297 F.3d 959, 965-66 (10th Cir. 2002) (citation omitted). These factors have been used:

> (1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4)

>whether the defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment.

*Id.* (citations omitted). "In no case, however, is any single factor determinative." *United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987), *cert. denied*, 488 U.S. 983 (1988).  A court should consider first the details of the interrogation, because a defendant's personal characteristics "are relevant only if the court first concludes that the officer's conduct was coercive." *United States v. Erving L.*, 147 F.3d 1240, 1249 (10th Cir. 1998).

Before a *Miranda* waiver or confession may be found involuntary, the court must find first coercive police action. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause."); *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("[T]he relinquishment of the [*Miranda*] right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.").  Thus, in the absence of police coercion, a court cannot conclude a defendant's waiver or inculpatory statements are involuntary. *See United States v. Lugo*, 170 F.3d 996, 1004 (10th Cir. 1999).  "While the defendant's mental condition is an important consideration, to find a

14

statement involuntary, the police must somehow overreach by exploiting a weakness or condition known to exist." *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993) (citing in part *Connelly*, 479 U.S. at 162). The "ultimate inquiry is whether the officers took unfair advantage of the defendant's traits or surrounding circumstances." *United States v. Lamy*, 521 F.3d 1257, 1261-62 (10th Cir. 2008) (internal quotation marks and citation omitted).

The facts of this case do not resemble the "direct and inexcusable" threats against a subject's family that would even implicate concerns of coercive activity. *See United States v. Yates*, 479 F. Supp. 2d 1212, 1216 (D. Kan. 2007) (and cases cited therein); *United States v. Alcarez-Mora*, 246 F. Supp. 2d 1146, 1154 (D. Kan. 2003); *United States v. Ponce Munoz*, 150 F. Supp. 2d 1125, 1135 (D. Kan. 2001). This is not a case of unfounded threats to arrest the suspect's family, *Ponce Munoz*, 150 F. Supp. 2d at 1135, or a case in which a parent with no criminal history is surrounded by officers and then threatened with having his or her children removed from her, *see Lynumn v. Illinois*, 372 U.S. 528, 534(1963). Captain Brown did not threaten to arrest the defendant's sister or to have her children removed from her if the defendant did not cooperate. There

was no direct reference to the defendant's sister or her children or to what could happen to her family should the defendant decide to not make a statement.

Instead, before the officers ever mentioned the possibility of others being charged, the defendant volunteered first that anything found in the apartment was his. The defendant's statement reveals his existing knowledge that other occupants could be charged with the guns or contraband found in the apartment if he did not admit to possession. Only after the defendant volunteered this statement did Captain Brown express any possibility of others being charged. In fact, Captain Brown's statement only explained that a blanket admission was unacceptable and that if the defendant wanted to take responsibility for the guns and contraband then he would reveal their particular location. Captain Brown's comments cannot reasonably be construed as anything more than a frank and realistic discussion of how the defendant would have to exercise the option he had already chosen. *See Ponze Munoz*, 150 F. Supp. 2d at 1135-36 ("[O]fficers' discussion of realistic penalties or results for cooperative and non-cooperative defendants does not render the defendant's confession or waiver of *Miranda* rights involuntary or coercive."). That such a comment

may have been considered by the defendant in following through with his decision to protect the others does not transform the comment into overreaching and unfair activity coercively undermining the defendant's ability to exercise his free will. *See Oregon v. Elstad*, 470 U.S. 298, 304-305 (1985) (Fifth Amendment is not "concerned with moral and psychological pressure to confess emanating from sources other than official coercion.").

Even assuming Detective Brown's comments could be construed as coercive, the evidence establishes the defendant's statements leading to the discovery of the gun were voluntary. As indicated at the hearing, this is hardly the defendant's first contact with law enforcement. When the officers arrived on the scene, the defendant ran into the apartment risking the safety of his sister and her children. As they were being removed from the apartment, he tried to escape out the back. When that failed and a dog was released into the apartment, the defendant then surrendered. At the time of his arrest and on the witness stand, the defendant certainly demonstrated the maturity and intelligence to identify, weigh and decide upon his choices. The defendant was not physically abused, nor was he subjected to undue psychological pressure from

officers. The statements were made shortly after the defendant's arrest and after he had waived his *Miranda* rights. The government has carried its burden of proof that the defendant's statements on September 20, 2008, were voluntary and not coerced by any threats of retaliation against the defendant's family.

Because the defendant was not coerced into making the September 20th statement disclosing the location of the handgun, the seizure of it is not the fruit of any involuntary statement or any invalid consent. Additionally, the handgun would not be suppressed as it would have been inevitably discovered during the consensual search of the apartment whether or not the defendant cooperated with officers. The defendant's sister had consented to an immediate search of her apartment. There is no question that such a search for handguns would include looking under sofa cushions. "[I]f evidence seized unlawfully would have been inevitably discovered pursuant to a legal search, the evidence is admissible." *United States v. Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997). The defendant's motion to suppress is denied as to his statements made on September 20, 2008, and to the seizure of the handgun.

**MOTION FOR NOTICE OF EVIDENCE OF OTHER CRIMES, ACTS, WRONGS OR CONVICTIONS (Dk. 19)**

Because the government has no objection to this motion, it is granted. The government shall comply with the defendant's requests in a timely manner.

IT IS THEREFORE ORDERED that the defendant's Motion to Suppress Identification (Dk. 14) is denied;

IT IS FURTHER ORDERED that the defendant's Motion to Suppress (Dk. 16) statements he made to law enforcement agents on February 20, 2008, March 12, 2008, and May 27, 2008, is granted without prejudice to the government's request to reconsider these motions in light of some change in Detective Ryan Runyan's status, but is denied as to the defendant's statements made on September 20, 2008, and to the seizure of the handgun;

IT IS FURTHER ORDERED that the defendant's Motion for Notice of Evidence of Other Crimes, Acts, Wrongs or Convictions (Dk. 19) is granted.

Dated this 31st day of August, 2009, Topeka, Kansas.


                s/ Sam A. Crow
                Sam A. Crow, U.S. District Senior Judge