IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

               Plaintiff,

    Vs.                            No.  09-40048-01-SAC

OLLIE BROWN, JR.,

               Defendant.


MEMORANDUM AND ORDER

       This case comes before the court on the defendant Ollie Brown, Jr.'s motion in limine to exclude evidence of other crimes, acts, wrongs, or convictions.  (Dk. 41).  The government filed its notice of evidence (Dk. 32) announcing its intent to offer pursuant to Fed. R. Evid. 404(b) and 609 the defendant's 2003 conviction in Pemiscot County, Missouri, for attempted robbery in the first degree and armed criminal action and the defendant's 2008 arrest and charge for possession of a firearm in Junction City, Kansas.  The defendant's motion opposes the admissibility of both matters pursuant to Rule 404(b) and the admissibility of the conviction pursuant to Rule 609.

       Rule 404(b) recognizes that evidence of other acts may be admissible for purposes other than proof of a defendant's bad character or

general propensity to commit crime. This rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, . . . .

Fed. R. Evid. 404(b).  To be admissible under this rule, these four factors

must be met:

> (1) the evidence must be offered for a proper purpose; (2) it must be relevant; (3) its probative value must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) the court must give a proper limiting instruction, if it is requested by the defendant.

*United States v. Moran*, 503 F.3d 1135, 1144-45 (10th Cir. 2007) (citing

*Huddleston v. United States,* 485 U.S. 681, 691-92 (1988)), *cert. denied*,

128 S. Ct. 2424 (2008).

**2003 MISSOURI ATTEMPTED ROBBERY CONVICTION**

Neither the defendant nor the government has provided the

court with the judgment for this conviction or any underlying documents.  In

its notice, the government sets forth certain facts as the basis of the

conviction.  The defendant seems to accept the government's factual basis

but includes a few additional facts.

The defendant confronted a woman as she approached her car

2

after leaving work.[1]  As the victim opened her car door, the defendant

pointed a gun at her and told her to shut up and get into the car.  When

another person[2] approaches them, the defendant flees.  The defendant

describes his arrest five days later when he fled from the police and was

eventually arrested.  Officers found a gun in the defendant's coat that he

had discarded during the foot chase.  The defendant was seventeen years

old when he committed this offense and received an eight-year prison term.

As for the charges in the instant case, the allegations and

evidence offered at the suppression hearing were that the victim walked to

her car after work and before she could close her car door, the perpetrator

suddenly appears.  He points a car at her face and then climbs into the

back seat.  He tells her not to scream and threatens to shoot her.  The

victim does not have money or credit cards in her purse.  After an extended

conversation, the perpetrator orders her to drive the car to her bank, and

---

[1]The defendant describes the victim as having "left the courthouse for her car in the town square."  (Dk. 41, p. 2).  The defendant does not refute the government's representation that the victim was leaving work.  The defendant also notes that he was riding a bicycle when he approached the woman.

[2]The defendant's motion says, "when another car approached, the Defendant rode away on his bicycle."  (Dk. 41, p. 2).

the victim is able to flee the car before reaching the bank.

The government's notice outlines six purposes proper under Rule 404(b) for admitting this conviction:  motive, opportunity, identity, plan, knowledge, and absence of mistake or accident.  The notice also offers a general statement on the relevance of this conviction to each purpose. The defendant complains that the government's "scattershot approach" does not comply with Rule 404(b)'s reasonable notice requirement, but he cites cases that predate the 1991 rule change adding this notice requirement. The government's notice is sufficient here under the court's understanding of this requirement.  *See United States v. Zhitlovsky*, 2003 WL 21939024 at *1 (D. Kan. 2003).  The government's notice would be more useful to all if it only listed the more likely purposes for offering the 404(b) evidence.  The court also appreciates the government's interest in covering all potential purposes, since the ones to be considered will depend ultimately on what is disputed at trial.  The defendant's objection is overruled.

The government asserts the similarities to the Missouri conviction make it a  "signature crime."  The introduction of "signature quality" evidence, that is, evidence of a "modus operandi," is reserved for cases in which identity is disputed. *United States v. Mares*, 441 F.3d 1152,

1159 (10th Cir. 2006), *cert. denied*, 551 U.S. 1162 (2007); *see, e.g.*, *United States v. Oberle*, 136 F.3d 1414, 1417 (10th Cir.) ("Information that Oberle had committed bank robberies in a similar manner was relevant in this case, where the main issue was the identity of the robber." (citations omitted)), *cert. denied*, 525 U.S. 885 (1998); *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982) (finding signature quality from such similarities as the defendant driving the getaway vehicle and using her children as "cover"), *cert. denied*, 461 U.S. 910 (1983).  "[T]o prove identity, evidence of prior illegal acts need not be identical to the crime charged, so long as, based on a 'totality of the comparison,' the acts share enough elements to constitute a 'signature quality.'"  *United States v. Shumway*, 112 F.3d 1413, 1420 (10th Cir.1997) (quoting *United States v. Patterson*, 20 F.3d 809, 813 (10th Cir.), *cert. denied*, 513 U.S. 841 (1994)) (further citations omitted).  "Elements relevant to a 'signature quality' determination include the following:  geographic location, the unusual quality of the crime, the skill necessary to commit the acts, or use of a distinctive device." *Shumway*, 112 F.3d at 1420 (citations omitted).  Not only is this listing is not exhaustive, but the weight of a factor or the number of factors needed for "'signature quality' are highly dependent on the elements' uniqueness in

5

the context of a particular case."  *Id.*  "In other words, a few highly unique
factors may constitute a 'signature,' while a number of lesser unique factors
'although insufficient to generate a strong inference of identity if occurred
separately, may be of significant probative value when considered
together.'" *Id.* (quoting *United States v. Myers*, 550 F.2d 1036, 1045 (5th
Cir.1977)).

From the suppression hearing, the issue of identity will be hotly
disputed on the first three charges.  Among the government's listed
purposes for offering the attempted robbery conviction is identity.  The
defendant insists the only similarities are the sex of the victim and the
location near a car.  The court, however, finds that the weight, number and
uniqueness of the following factors of similarity are sufficient to establish
relevance on the issue of identity:  1)  the victim is targeted, 2) the victim is
a lone woman, 3) the victim is leaving work and walking some distance
toward her car, 4) the perpetrator surprises the victim as she is entering the
car and preparing to leave, 5) the perpetrator points a gun at the victim, 6)
the perpetrator instructs the woman to get into her car, and 7) the
perpetrator warns the victim to be quiet.  That in the Missouri offense, the
defendant used a bicycle, was unable to complete the offense, and later

6

confessed are not factors that materially detract from a finding of relevance.  As for the five-year span separating the events, this is not an unreasonable period when weighed against the finding of similarity based on such  common features of distinctive quality as conduct, words, victim, location, scheme, and timing of the conduct.   These shared facts overshadow the  differences argued by the defendant.  The court finds that the events are sufficiently similar to establish relevance for the purpose of identity.

"[W]hen other-act evidence is admitted for a proper purpose and is relevant, it may be admissible even though it has 'the potential impermissible side effect of allowing the jury to infer criminal propensity." *United States v. Moran*, 503 F.3d at 1145 (quoting *United States v. Cherry*, 433 F.3d 698, 701 n.3 (10th Cir. 2005), *cert. denied*, 547 U.S. 1120 (2006)).  The court is to balance this potential prejudicial effect under Rule 403 and exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice . . . .'"  *Moran*, 503 F.3d at 1145 (quoting Fed. R. Evid. 403).  To be excluded under this rule, the evidence "must 'make a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the

7

jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.'" *United States v. Smith*, 534 F.3d 1211, 1219 (10th Cir.)  (quoting *United States v. Portillo-Quezada*, 469 F.3d 1345, 1354 (10th Cir. 2006), *cert. denied*, 551 U.S. 1171 (2007)), *cert. denied*, 129 S. Ct. 654 (2008).  The defendant comes forward with no specific arguments on how this evidence would inflame the jury unfairly and emotionally.  The court finds the probative value of the prior conviction on the issue of identity is not substantially outweighed by the danger of unfair prejudice.   The court intends to give a limiting instruction and encourages the defendant to submit one for the court's consideration.  The defendant's motion in limine to exclude this conviction is overruled.

**2008 FIREARM POSSESSION**

According to the parties, a Junction City police report reflects that on January 25, 2008, there was a traffic stop of a car driven by the defendant's wife, Erica Brown.  The defendant was a passenger in the car, and he gave false information about his identity.  An officer recognized the defendant and learned the defendant had an outstanding arrest warrant from Saline County, Kansas.  Upon his arrest, the car was searched, and a .40 caliber firearm was found under the passenger's seat and a box of .40

8

caliber ammunition was found under the driver's seat.  The defendant admitted to officers that the firearm was his, that an associate had given it to him, and that he needed it because of conditions "on the streets."

The government seeks to use the evidence from this traffic stop to prove motive, opportunity and knowledge, preparation and plan, and lack of mistake or accident, on the firearm charges.  These are all proper purposes under the rule.  With regard to count four, the defendant denies possession of the firearm and indicated in his testimony at the suppression that the gun belonged to his sister's boyfriend.  There are a number of factors establishing similarity:  1) temporal proximity--this firearm possession occurred just 43 days after the carjacking and less than eight months before the events surrounding the defendant's arrest in September 2008 that resulted in count four's firearm charge;  2) geographical proximity--this firearm possession occurred in the same city as that charged in count four; 3) shared circumstances--family members are present both at the January and September events and the firearms are found not on the defendant personally but in an area of common access; 4) the firearms would have been unlawfully possessed by the defendant on all three occasions; and 5) the similar type of firearms--the weapons used in

the carjacking and discovered at defendant's arrest are inexpensive, semi-automatic pistols similar to the pistol found under the car seat.  The court finds the defendant's possession of a firearm on January 25, 2008, is sufficiently similar to the charged firearm offenses.  The court agrees the challenged evidence is relevant to prove the knowledge element of the offenses. Showing that the defendant knowingly possessed a firearm at another point in time "supports the inference that he had the same knowledge in the context of the charged offense."  *United States v. Moran*, 503 F.3d at 1144 (affirming the admission of an eleven year-old conviction for being a felon in possession of a firearm to show "knowing possession of the firearm," where the defendant denied knowledge of the gun's presence).  The defendant's stated reasons for possessing a firearm in January of 2008 are further relevant in establishing reasons for the defendant's possession and in showing lack of mistake and accident.

The court finds that the probative value of this evidence is strong and is not substantially outweighed by the danger of unfair prejudice.  His prior possession of a firearm and the reasons for doing so tend to make his knowledge of the weapon discovered in September of 2008 more probable than without the evidence.  The court is not convinced

10

by any argument of unfair prejudice advanced by the defendant.  With the introduction of this evidence at trial, the court will give a limited instruction and invites the defendant to submit a proposed instruction.  The defendant's motion in limine to exclude this evidence is denied.

IT IS THEREFORE ORDERED that the defendant Ollie Brown, Jr.'s motion in limine to evidence of other crimes, acts, wrongs, acts or convictions (Dk. 41) is denied.

Dated this 8th day of September, 2009, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

11